Good morning, Your Honors. May it please the Court, Counsel, as it stands currently with the District Court's opinion, a case that should not go to trial will go to trial unless this particular panel acts. There are three bases for our interlocutory appeal for three issues. First, there was no evidence of discriminatory intent on the part of the officers on behalf of Officer Burke, particularly in light of the fact that none of the evidence that was advanced to prove intent related to Officer Burke. Second, the defendants are entitled to qualified immunity in this case because it is a highly unique case without any controlling precedent. Third, this case was fraught with error. As to the last point, which also touches upon the second point, the defendant officers were initially dismissed based upon qualified immunity in this matter, dating back to January 25, 2013, when the Court ruled upon the motion to dismiss. Over two years later, after the summary judgment had been briefed, the Court, sua sponte, allowed a plaintiff to amend to add them back in as individuals on a selective enforcement claim when such claim only existed against the village in the form of a Monell claim. The initial claims were Fourth Amendment claims, and based upon Wren v. United States, the subjective belief of the officers is not relevant. Counsel, I think you need to spend some time discussing Johnson v. Jones. In the jurisdictional issue, Your Honor? That's what Johnson v. Jones is about. Yes, Your Honor. Well, in this particular case, there are two bases for jurisdiction. First, there is an exception to Johnson v. Jones when the District Court doesn't specifically identify the facts that are in dispute, which would prohibit a party's granting of qualified immunity. I don't comprehend that. The District Judge said in this case that there is a material disputed issue of fact and identified that as the defendant's knowledge and motive. Johnson v. Jones says we can't reexamine that, and without an ability to reexamine that, I don't understand how there's anything left to this appeal. Because you can't avoid the consequence that if our plaintiff was arrested because of his imputed religion, there's a serious constitutional problem. And, Your Honor, that goes to our second issue. It's not a second issue. It is the threshold issue, appellate jurisdiction. And even if we are to assume that the officers had a discriminatory animus and intent, under the circumstances where you have a private homeowner who wishes to press charges, and there is an on-scene event which gives rise to probable cause, which the District Court did find, we believe that under those circumstances that qualified immunity would apply, because there's not necessarily the intent. Look, the District Court identified as the disputed issue having to do with knowledge and intent essentially whether the defendants would have arrested the plaintiff had they believed his religion to be different. They have discretion whether to arrest. If you arrest people you believe to be Moorish science adherents, but under identical circumstances don't arrest people you believe to be Christians, there's a serious problem. I understand your point, Your Honor. And I would say under these circumstances, both officers testified that given the fact that there was a private homeowner, they did not believe they had the discretion. Also, the Illinois Compiled Statutes, which cites to the trespass statute, doesn't identify what they're to do, which was acknowledged by the District Court. And additionally, there was no precedent on point to say that an officer under these circumstances, when they've been back to a house, four days in a row, or after four days. You now sound like you're arguing a different factual question, which is causation. But again, that's not a question about whether the federal constitutional law is uncertain. That's the question for qualified immunity. If you say there's no causation, you're back to a dispute about facts rather than uncertainty in the law. And based upon what I'm arguing, Your Honor, and perhaps I'm being unclear, is with respect to selective enforcement and the discriminatory intent, even if this Court were to presume, and we accept as true, that they did have discriminatory intent, the fact that you have a property owner who is insistent on pressing charges, which is undisputed, signs criminal complaints to press charges, both officers testified at their deposition, and it's been uncontroverted that they – If I could cut to the chase. Your argument is that even assuming discriminatory intent, they had no discretion. They had to arrest. That's what I understand your argument to be, because they had a complaining homeowner insisting on pressing charges. But there's a dispute of fact about the scope of their discretion. So that's, as Judge Easterbrook has said, just a different factual dispute that needs a trial. And, well, I would also – and it happened after or near the time of filing. The Illinois Supreme Court, and it was cited in the Appellee's brief, the public duty exception or public duty rule has been abolished in Illinois. So now the officers are putting a catch-22 because, for example, if they don't, now they do owe a duty to a private individual where they didn't, and that case has been applied retroactively because they remanded it back to the circuit court in the state of Illinois. So now without that protection, if they arrest, on one hand they face potential liability, and if they don't arrest they face potential liability. It creates an unworkable framework in which to enforce the laws, and there's been no case that says from any circuit that we could unearth that the officers have the discretion when there's a private complainant to override that private complainant's ability to press charges and make an arrest in that situation when there's actually – there has been a crime committed. And I think the lack of guidance was recognized from day one by the district court when it granted qualified immunity to the officers with respect to the illegal seizure Fourth Amendment claims and false arrest claims. And now this is the end product of that lack of clarity and guidance. So even if we were to assume that there was an arrest and the officers thought he was a moor, regardless of their belief, the officers are sitting in a position of a private homeowner who wants to press charges, has pressed charges, and is essentially initiating the stop. Unlike some of the other selective enforcement claims, such as Chavez v. Illinois State Police, the officers did not initiate this stop. This was actually initiated two times by the homeowner, Mr. Clark, once on April 18th and then again on the 22nd when there was an arrest. So I think under those circumstances and without any – in the Mullinex v. Luna case, without any governing law, I believe that the officers are entitled to qualified immunity. I see my time is up. I will reserve my rebuttal time and answer any questions at that point in time. Thank you. Thank you. Mr. Horwitz. Good morning, Your Honors. Barry Horwitz representing Plaintiff Eppley in this case. May it please the Court, Counsel. While defendants would have preferred to see their version of the facts accepted by the district court, the district court followed the law in this case and viewed the facts in the light most favorable to plaintiff. And the fact that defendants' version of the facts was not accepted does not and cannot confer jurisdiction on this court. The case law proving that this court lacks jurisdiction is clear. And let's start with before Scott v. Harris in 2007. The Seventh Circuit cases preceding Scott v. Harris, like Villa v. Legrand and McKinney v. DuPlein, tell us that qualified immunity appellants cannot question the sufficiency of the evidence that created a disputed factual issue for trial. In Jones v. Clark, this court only concluded it had jurisdiction to hear a denial of qualified immunity appeal because the defendant expressly conceded an adopted plaintiff's version of the facts and repeated an oral argument, we're asking Your Honors to accept everything Jones says. That is exactly that. So between Jones and DuPlein, it is clear that an appeal challenging this denial of qualified immunity begins with the premise that all plaintiff's facts are presumed to be true or at the very least, the facts that the district court identified in its opinion denying qualified immunity are presumed to be true. That's the only way to present an abstract issue of law on appeal. And that is exactly the opposite of the situation here. Defendants have based their entire appeal on their argument that plaintiff's version of the facts is wrong and that the district court got those facts wrong. And in fact, the district court made several explicit findings on the facts. We can go into those facts as to the discriminatory motive, although it seems as though defendants have possibly even left that issue as moot, saying that their discriminatory motive might be moot. But regardless, defendants, at least in their briefs, refused to accept their version of facts on this appeal, and they'd say that the district court failed to see through plaintiff's charade. That is a clear refusal to accept the district court factual findings, and that's why there's no jurisdiction here. They're not raising an abstract issue separable from the facts. They're instead asking this court to abandon its precedence on appellate jurisdiction in favor of a new rule that defendants' self-serving and biased testimony, their denials that they didn't know anything about wars, somehow contradicts plaintiff's contradictory testimony, even though all of this court's precedents hold that on defendant's summary judgment motion, plaintiff is entitled to have all of the facts and reasonable inferences viewed in his favor. The district court properly disregarded their self-serving testimony, and they do not cite a single case establishing that an appeals court can ignore the plaintiff's version of the facts and credit defendant's testimony. For example, this court's ruling in White v. Girardot, which postdates Scott v. Harris, expressly stated where appellant makes only a sufficiency of the evidence argument, the appeal presents no abstract issue of law, and the court lacks jurisdiction. And interestingly also in that case, they noted the facts that Girardot claims are undisputed are disputed. Indeed, Girardot simply has taken his version of the facts and labeled them undisputed. That is exactly what defendants are doing here. Defendant's purported abstract legal issue contains two factual elements that are in dispute, that the homeowner unreservedly wanted to press charges, and before the identity of the trespasser was known. The only basis for these alleged facts is the defendant's own biased testimony. A police report from another case, which is evidence in this case, shows that defendant Williams himself expressly noted the homeowner in that case wanted to press charges. Now if the homeowner in this case wanted to press charges so adamantly and unreservedly, why did that fact not show up in either of the two police reports that arose from the altercations in this case? And likewise, four days before the arrest, Mr. Clark saw the real estate paperwork in the unknown car in his garage, suggesting that Moores owned his house. Defendants inspected that same car, so there is plenty of evidence to support defendants' knowledge that the trespassers may be affiliated with Moores. Now, Scott v. Harris is essentially what they're hanging their hat on to say that this court can review the entire factual record de novo. Scott v. Harris is not that large, it does not drive so large a truck through the jurisdictional bases that we've just gone through. Instead, it's a very narrow ruling, one that even the defendants have characterized as a rare and extreme circumstance, where the appeals court is faced with objective evidence. Now, in that case, it was a videotape, and a videotape which establishes that the plaintiff's facts, or maybe even the facts that the district court found and assumed in its opinion, are blatantly and demonstrably false. So the appeals court can say so. That is what Scott v. Harris says. If you have objective evidence like a videotape, the appeals court can say the facts do not bear out as the plaintiff alleges. But in this case, there is no objective evidence. There's nothing like an audio recording. They don't have ten other witnesses who testify that plaintiff's version of the facts are wrong. They have no objective evidence. All they have is their own self-serving testimony and denials. And that is why Scott v. Harris doesn't apply. There's simply no jurisdiction to entertain this appeal where defendants refuse to accept the facts as plaintiff has established and as the district court found. Now, it appears as though we agree there's sufficient proof for the discriminatory motive for the arrest. Defendants raised some, I'm sorry, arguments in their brief regarding inferences and that plaintiff is trying to push too hard to get certain inferences. But it's pretty clear from the facts that the defendant officers inspected the car and that there were real estate paperwork in that car. And Mr. Clark admitted on the day before or perhaps the very same day he saw that real estate paperwork in that car. So the inference that every reasonable juror would understand is inanimate objects do not move on their own. We've misplaced keys or a phone and the first question someone asks you is where did you last see them? Mr. Clark last saw the paperwork in the car. We have no evidence that it was moved and the defendants inspected that car the very next day. Now, their only argument to that is for all we know the paperwork could have been moved and they demand that we bring in the owner of the Volkswagen to testify that the car wasn't moved. I mean, all of this is ridiculous. They have no evidence that it was moved. And by the way, defendants mentioned that there's no evidence for Defendant Burke. Defendant Burke inspected the car along with Defendant Williams and would have. Counsel, given your jurisdictional argument, why are you devoting all your time to the facts? You might want to address the question whether there is a contested issue of law. If not, we're in the world of Johnson against Jones. So, thank you. As to the contested issue of law, again, their whole theory is that the homeowner unreservedly demanded to press charges before the identity of the trespasser is known. As I've already noted, these are two disputed factual issues. But even if you do not look towards the disputes in those facts, we have case law that we've cited in our brief that says police officers have discretion at all times. We have the testimony of the chief of police saying that they have discretion at all times. So, there is no support for their argument that they simply have to follow the demands of a private citizen. If a private citizen demands they arrest someone, they must follow through on that orders. They're essentially asking this Court to announce a new rule that their discretion is limited to the demands of private citizens. And then as to his argument regarding a case that would put them on clear notice that this is a violation of clearly established law, that's simply not the case. You know, defendants need only fair notice that there is a violation of the law here. And it's been clear since the Equal Protection Clause has been passed that you cannot enforce the law more harshly against a certain group of people, a minority group of people, based on their belief that someone is affiliated with a minority group, even if they don't happen to be, as was the case in here. So, thank you for the Court. I will yield. Thank you, Mr. Horowitz. Mr. Lancedo? Yes, briefly, Your Honor. I just want to touch briefly, Judge Easterbrook, on the case law that they've cited. There were three cases that they advanced for discretion. The first was People v. Marion, and that dealt with an agreement not to arrest in exchange for information as an informant. The second was People v. Shepard, which dealt with when an officer can effectuate a traffic stop and whether or not he has to act within a certain amount of time before effectuating that traffic stop. The third was Zimmerman v. Village of Skokie, which dealt with the public duty exception, which I've already indicated was abolished by the Illinois Supreme Court and is no longer good law. And it's important to note that all of those cases dealt with officer initiation of a stop or of confronting the individual. This case is entirely different. There is not one case that has been cited. So if you're assuming, even presuming, there was some animus, there's not one case presented before this Court in any case law that we've been able to unearth that an officer has unfettered discretion in the face of an actual criminal offense and a victim wishing to press charges. Therefore, given the language in Mullnick v. Luna, there's no case law that squarely governs the facts that would give you fair notice, and an officer fair notice, that his conduct was running afoul of the Constitution. Therefore, I would suggest or request that this Court reverse the district court and apply qualified immunity as to the officers. Thank you for your time. Thanks, Mr. Segal. Thanks to all counsel. The case is taken under advisement. Court will stand in recess. Thank you.